# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDREW BURKETT and | § | |
| DENISE BURKETT, both individually | § | |
| and on behalf of other similarly | § | |
| situated plaintiffs | § | PLAINTIFFS |
| | § | |
| v. | § | Civil No. 1:10CV68-HSO-JMR |
| | § | |
| BANK OF AMERICA, N.A., | § | |
| BANK OF AMERICA CORPORATION, | § | |
| COUNTRYWIDE HOME LOANS, INC. | § | |
| d/b/a BANK OF AMERICA HOME | § | |
| LOANS, INC., and BAC HOME LOANS | § | |
| SERVICING, LP | § | DEFENDANTS |
| | § | |

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DENYING PLAINTIFFS' REQUEST FOR ORAL ARGUMENT

THIS MATTER COMES BEFORE THE COURT on the Motion for Class

Certification [106] filed by Plaintiffs, Andrew Burkett and Denise Burkett.

Defendants have filed a Response [116] and Plaintiffs a Reply [118]. After

consideration of the parties' submissions, the record, and the relevant legal

authorities, and for the reasons discussed below, the Court finds that Plaintiffs'

Motion for Class Certification [106] should be denied.

## I. BACKGROUND

On January 21, 2005, Plaintiffs purchased a home in Gulfport, Mississippi,

with a mortgage loan guaranteed by the Federal National Mortgage Association

("Fannie Mae"), and serviced by Defendant Countrywide Home Loans, Inc. ("CHL").

Pls.' Sec. Am. Compl. [133] at p. 25; Defs.' Answer [134] at p. 14; Defs.' Resp. [116]

at p. 7. Bank of America, N.A. ("BANA"), is successor by merger to BAC Home

Loans Servicing, LP ("BAC"), Bank of America Corporation ("BOA"), and CHL

(collectively "Defendants"). Defs.' Answer [134] at p. 1. BAC was formerly known

as CHL, and merged with BANA, effective July 1, 2011. *Id.* at pp. 4, 6.

Plaintiffs' lawsuit stems from the HomeSaver Forbearance Program ("HSF

Program"), a six month forbearance program offered by Fannie Mae in 2009 to

borrowers with mortgage loans "that [were] either in default or for whom default

[was] imminent and who [did] not qualify for [the Home Affordable Modification

Program]." Fannie Mae Announcement 09-05 R at p. 31 [106-1], Ex. A to Pls.' Mot.

for Class Certification [106]. According to Defendants, the HSF Program lasted

only six months, and was retired on October 21, 2009. Defs.' Resp. [116] at p. 7.

Fannie Mae's Announcement of the HSF Program stated that "a servicer should

offer a HomeSaver Forbearance if such borrowers have a willingness and ability to

make reduced monthly payments of at least one-half of their contractual monthly

payment." Fannie Mae Announcement 09-05 R [106-1] at p. 31. The

Announcement provided that the Program "should reduce the borrower's payments

to an amount the borrower could afford, but no less than 50 percent of the

borrower's contractual monthly payment . . . ." *Id.* at pp. 31-32. It pronounced that

servicers would "receive a $200 incentive fee upon successful reporting to Fannie

Mae of the initiation of a HomeSaver Forbearance plan and collection of one

payment under the forbearance plan." *Id.* at p. 32.

By letter dated July 31, 2009, BAC advised Plaintiffs that they qualified for

the HSF Program and could have their monthly mortgage payment reduced by up to 50 percent for up to six months.  Solicitation Letter, Ex. G [133-13] to Pls.' Sec. Am. Compl. [133].  The letter stated:

> **Let us know if you accept this offer**
> If you are willing and able to make these reduced monthly payments, your next steps are:
>
> 1)   Sign and return the enclosed Forbearance Agreement no later than 9/1/2009.  We have included an envelope for your convenience.
> 2)   Make your first monthly payment as listed in the Forbearance Agreement. . . .

*Id.*  Plaintiffs did not execute and return the Forbearance Agreement, or otherwise notify Defendants that they accepted the offer to enroll in the HSF Program.  Pls.' Sec. Am. Compl. [133] at p. 27; Defs.' Resp. [116] at p. 1.  BANA nevertheless enrolled Plaintiffs in the HSF Program.  *Id.*

Plaintiffs allege that Defendants engaged in a scheme to enroll them and at least hundreds of other borrowers in the HSF Program without their consent.  Pls.' Sec. Am. Compl. at pp. 20-23, 30; Pls.' Mem. [109] in Supp. of Mot. for Class Certification [106] at pp. 4, 6.  They charge that Defendants did so in order to receive incentive fees from Fannie Mae and to otherwise profit from the Program. *Id.*  They contend that once borrowers were enrolled in the HSF Program, Defendants did not apply their payments to their accounts when received, but instead applied only partial payments established by the HSF Program, which allowed Defendants to earn interest and gain credit standing on the unapplied portion of the borrowers' payments.  Pls.' Sec. Am. Compl. [133] at pp. 27-28.

Plaintiffs assert that Defendants' failure to apply the full amount of the participants' payments as they were received caused their accounts to become either delinquent or more delinquent. Pls.' Sec. Am. Compl. [133] at pp. 20-23, 27-28; Pls.' Reply [119] at pp. 2, 4, 11-14. They allege that Defendants charged late fees for delinquencies which occurred due only to participants' payments not being fully applied upon receipt. Pls.' Sec. Am. Compl. [133] at p. 21. Plaintiffs argue that Defendants, by enrolling borrowers into the HSF Program without their permission, unlawfully amended the borrowers' loan agreements. Pls.' Mem. [109] in Supp. of Mot. for Class Certification [106] at p. 4.

Defendants do not dispute that BANA received incentive payments from Fannie Mae for enrolling borrowers in the HSF Program. Defs.' Resp. [116] at p. 6. Nor do they contest that borrowers, including Plaintiffs, were enrolled in the HSF Program, despite not executing a HSF Forbearance Agreement or otherwise consenting. Defs.' Resp. [116] at pp. 5, 7, 9. Defendants claim, however, that Fannie Mae abrogated the requirement of a signed Forbearance Agreement and directed BANA to enroll borrowers in the HSF Program upon receipt of a partial, rather than full, payment, "without waiting for the returned HSF solicitation forms." *Id.* at pp. 5, 9. Defendants acknowledge that, as part of the HSF Program, partial mortgage payments made during the HSF term were not applied until they added up to a full payment, and that they were applied to the most delinquent payment first. Defs.' Resp. [116] at p. 4. They further acknowledge that they continued to assess late fees and report participants delinquent to credit agencies

-4-

until their loans were completely current under the original loan documents. *Id.* at pp. 4-5. Defendants argue that this application of partial payments, the charging of late fees, and the resulting credit reporting, were all consistent with Plaintiffs' original loan documents. *Id.* at p. 5.

Plaintiffs assert a wide variety of federal and state claims against Defendants, namely (1) violations of the Truth in Lending Act (15 U.S.C. § 1639(a),(b),(d) and (f), and Regulation Z, 12 C.F.R. 226.36)(TILA); (2) violations of the Real Estate Settlement Procedures Act (12 U.S.C. § 2605(g))(RESPA); (3) negligence; (4) gross negligence; (5) negligence *per se*; (6) breach of duty of good faith; (7) breach of duty to a third-party beneficiary; (8) unjust enrichment; (9) constructive trust; (10) conversion; (11) breach of contract; (12) breach of implied contract; (13) bad faith breach of contract; (14) bad faith breach of implied contract; (15) fraud; and (16) misrepresentation. Pls.' Sec. Am. Compl. [133] at pp. 33-47; Pls.' Mem. [109] in Supp. of Mot. for Class Certification [106] at pp. 11-12. They request actual and compensatory damages, statutory damages, restitution, disgorgement of profits, punitive damages, and specific performance. Pls.' Sec. Am. Compl. [133] at p. 48.

Plaintiffs seek class certification, under Federal Rule of Civil Procedure 23(a)(1-4) and (b)(3), for a nationwide class of "at least hundreds of individuals" or perhaps "thousands." Pls.' Sec. Am. Compl. [133] at p. 30; Pls.' Mot. for Class Certification [106] at p. 1; Pls.' Reply [118] at p. 1. They propose the following class definition:

> [a]ll consumers whose mortgage loans on their residences are currently owned or serviced by one or more of the Defendants, or whose loans have been owned or serviced by one or more of the Defendants, and who either had a loan that qualified for the Fannie Mae HomeSaver Forbearance Program, and/or who were offered enrollment into the Fannie Mae HomeSaver Forbearance Program by any of the Defendants, and/or who were informed or notified by any of the Defendants that a loan through or serviced by any Defendant qualified for the Fannie Mae HomeSaver Forbearance Program, and/or whose loan was enrolled by Defendants into the Fannie Mae HomeSaver Forbearance Program.

*Id.* Plaintiffs request oral argument on their Motion [106].

## II. DISCUSSION

### A. Request for Oral Argument

On the face of their Reply [118][119], Plaintiffs request oral argument. Local Uniform Rule 7(b)(6)(A) provides that "[t]he court will decide motions without a hearing or oral argument unless otherwise ordered by the court on its own motion or, in its discretion, upon written request made by counsel in an easily discernible manner on the face of the motion or response." L.U. Civ. R. 7(b)(6)(A). The Court does not find that oral argument is necessary or helpful in resolving this Motion.

### B. General Legal Standard

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2550 (2011)(internal citations omitted). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.*

The United States Supreme Court, recognizing the important due process concerns of both plaintiffs and defendants in the decision to certify a class, requires district courts to conduct a rigorous analysis of Rule 23 prerequisites before certifying a class. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982); *see Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996). "The decision to certify is within the broad discretion of the [district] court, but that discretion must be exercised within the framework of [R]ule 23." *Castano,* 84 F.3d at 740. "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Maldonado v. Ochsner Clinic Found.,* 493 F.3d 521, 523 (5th Cir. 2007).

A class action may only be maintained if all four of the requirements set forth in Rule 23(a) of the Federal Rules of Civil Procedure, and at least one of the requirements of Rule 23(b), are satisfied. FED. R. CIV. P. 23; *see Maldonado,* 493 F.3d at 523. The party seeking class certification bears the evidentiary burden of demonstrating that all requirements are met. *Madison v. Chalmette Ref., LLC,* 637 F.3d 551, 554-55 (5th Cir. 2011). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart,* 131 S. Ct. at 2551. A party seeking class certification must affirmatively demonstrate his compliance with the Rule 23 requirements. *Id.*

Rule 23(a) requires (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FED. R. CIV. P. 23(a). "The commonality and typicality requirements of 23(a) tend to merge." *Wal-Mart,* 131 S. Ct. at 2551 n.5. "Both

serve as guideposts for determining whether under the particular circumstances

maintenance of a class action is economical and whether the named plaintiff's claim

and the class claims are so interrelated that the interests of the class members will

be fairly and adequately protected in their absence." *Id.*

Because Plaintiffs seek certification under Rule 23(b)(3), they must also

demonstrate "that the questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating

the controversy." FED. R. CIV. P. 23(b)(3).  Defendants argue that class certification

is inappropriate because Plaintiffs cannot meet the Rule 23(a) requirements of

commonality and typicality, or the Rule 23(b)(3) requirement of predominance.

Defs.' Resp. [116] at p. 13.  The Court will focus its inquiry on those elements most

in dispute.

C.    Typicality

Because the Court's analysis of the typicality requirement informs its inquiry

on the commonality requirement, typicality will be addressed first.  Class

certification is only appropriate if "the claims or defenses of the representative

parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).

According to the Fifth Circuit:

> the test for typicality is not demanding.  It focuses on the
> similarity between the named plaintiffs' legal and remedial
> theories and the theories of those whom they purport to
> represent.  Typicality does not require a complete identity
> of claims.  Rather, the critical inquiry is whether the class

> representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir. 2002); *see James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001). Though the test for typicality is not demanding, "if proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." *Warnock v. State Farm Mut. Auto. Ins. Co.,* No. 5:08-cv-001, 2011 WL 1113475, *9 (S.D. Miss. 2011). "A plaintiff cannot represent a class of whom he is not a part." *Ordonez Orosco v. Napolitano,* 598 F.3d 222, 227 (5th Cir. 2010).

The essence of Plaintiffs' claims is that Defendants enrolled borrowers in the HSF Program without their consent. Pls.' Mem. in Supp. of Mot. for Class Certification [109] at p. 4 ("Defendants enrolled the Class Members into the HSF Program without their permission . . . ."); Pls.' Reply [118] at p. 1 ("Plaintiffs seek certification of a class of BANA borrowers who were damaged by Defendants' uniform practice of enrolling them in the [HSF Program] without consent . . . ."). Plaintiffs' proposed class definition, however, includes all borrowers who were enrolled in the HSF Program, including those who consented to enrollment, and those who signed a Forbearance Agreement. Pls.' Mot. for Class Certification [106] at p. 1. The proposed definition is also broad enough to include those who "qualified for" the HSF Program or "who were offered enrollment," but who were never

enrolled in the Program. *Id.*

In their Response to Plaintiffs' Motion for Certification, Defendants maintain that the broad scope of the proposed class definition defeats typicality. Defs.' Resp. [166] at p. 16. Plaintiffs counter that "[p]resumably, some of the Class Members may have elected to be enrolled into the Program and returned their forbearance agreement." Pls.' Reply [119] at p. 8. They argue that Defendants violated TILA as to all who were enrolled in the HSF Program, and contend that any typicality issues can be overcome by dividing the class into two subclasses: those who consented to enrollment in the HSF Program and those who did not. *Id.* Plaintiffs only address TILA as it relates to the proposed subclasses, however. *Id.* They do not explain whether members of both subclasses would pursue the remaining fifteen claims advanced in the Second Amended Complaint, nor do they elaborate on how Plaintiffs would be fair representatives of both subclasses. Plaintiffs also do not offer a response as to why persons who were never enrolled in the HSF Program are included in the proposed class definition, how such persons have claims against Defendants, or how Plaintiffs could fairly represent these individuals.

In short, Plaintiffs have not carried their burden in justifying the proposed class definition, which the Court finds overbroad. Plaintiffs have not shown that their claims and defenses have the same essential qualities as all of those in the proposed class. The typicality requirement for class certification is not met.

D.    Commonality

Commonality requires a plaintiff to show that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The rules for satisfying the commonality element were recently addressed by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011); *see M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 840 (5th Cir. 2012)(applying the heightened standard of *Wal-Mart*).

In *Wal-Mart,* the Supreme Court rejected the plaintiffs' request for class certification of 1.5 million current and former female Wal-Mart employees seeking relief under Title VII for gender discrimination. *Wal-Mart,* 131 S. Ct. at 2547. The Court found that Wal-Mart's alleged policy of giving broad discretion to local managers to make pay and promotion decisions did not constitute sufficient proof of any company-wide discriminatory policy, and thus failed to establish any common question of law or fact concerning a particular employment policy or practice that would satisfy commonality. *Id.* at 2554. The Court stated that the commonality requirement is not met by "generalized" questions that have little bearing on liability,[1] nor is it present where the named plaintiffs and putative class members have not suffered the "same injury." *Id.* at 2551. "Same injury" does not mean that the proposed class members have all suffered a violation of the same provision of law, because the same provision of law can be violated in many ways. *Id.* The

---

[1]The Court observed that the language in Rule 23 is easy to misread "since any competently crafted class complaint literally raises common questions." Id. at 2551.

claims "must depend on a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor." *Id.* "That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis supplied). *Wal-Mart* concluded that the class proponents' evidence had not revealed "a uniform employment practice that would provide the commonality needed for a class action." *Id.* at 2554. Instead, it showed the opposite, "a policy *against* having uniform employment practices." *Id.* (emphasis supplied).

Defendants have admitted that they enrolled qualified borrowers in the HSF Program despite those borrowers not executing a Forbearance Agreement or otherwise consenting to enrollment. Defs.' Resp. [116] at pp. 5, 7, 9. They admit that they enrolled all those solicited for the HSF Program, across the board, upon their submission of a partial, rather than full, payment. *Id.* They acknowledge that partial payments were not applied to a Program participant's account until they added up to a full payment, and that such payments were applied to the most delinquent payment first. *Id.* at p. 4. They also acknowledge that they continued to assess late fees and report borrowers as delinquent to credit agencies until their

loans were completely current under the original loan documents. *Id.* at pp. 4-5.

Defendants' admitted policies in administering the HSF Program were uniform and non-discretionary. They differ from the discretionary policy in *Wal-Mart.* Every member of the proposed class, however, was not affected by Defendants' policies. Those who were "qualified for" or "offered enrollment" in the HSF Program, but who were never enrolled, were not affected by any of Defendants' policies. Pls.' Mot. for Class Certification [106] at p. 1. Those who were enrolled by consent were not affected by Defendants' policies to enroll borrowers without consent. No single policy affects every member of the proposed class. Determining the legality of Defendants' policies, therefore, would not generate answers common to the entire class. Plaintiffs have not sufficiently identified common contentions capable of classwide resolution that would drive the resolution of the litigation. Commonality is not present.

E.    Predominance

Even assuming Plaintiffs could satisfy all of the Rule 23(a) factors, Plaintiffs must next demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The predominance requirement, "although reminiscent of the commonality requirement of Rule 23(a), is far more demanding." *Unger v. Amedisys, Inc.,* 401 F.3d 316, 320 (5th Cir. 2005). This inquiry requires the Court to consider how a trial on the merits would be conducted

if a class were certified.  *Bell Atl. Corp. v. AT&T Corp.,* 339 F.3d 294, 302 (5th Cir.

2003).  "This, in turn, 'entails identifying the substantive issues that will control the

outcome, assessing which issues will predominate, and then determining whether

the issues are common to the class,' a process that ultimately 'prevents the class

from degenerating into a series of individual trials.'"  *Id.* (citing *O'Sullivan v.*

*Countrywide Home Loans, Inc.,* 319 F.3d 732, 738 (5th Cir. 2003)).

Whether Defendants engaged in a common scheme pursuant to uniform

policies is not the dispositive question when determining whether the predominance

requirement has been met.  *Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 326

(5th Cir. 2008); *Blades v. Countrywide Home Loans, Inc.,* No. 1:06-cv-1000-HSO-

JMR, 2009 WL 903589, *3 (S.D. Miss. 2009).  Rather, the question is whether each

claim is so individualized, that separate mini-trials would be required to determine

which proposed class members have compensable claims.  *Blades,* 2009 WL 903589

at *3.  For several reasons, the Court finds that predominance is lacking here.

1.    Variations in State Law

"Plaintiffs have the responsibility to demonstrate that state law variations do

not preclude the certification of a nationwide class."  *Casa Orlando Apts., Ltd. v.*

*Federal National Mortgage Assoc.,* 624 F.3d 185, 195 (5th Cir. 2010).  "In a multi-

state class action, variations in state law may swamp any common issues and

defeat predominance."  *Castano,* 84 F.3d at 741 (holding that predominance was

defeated by the number of differing legal standards applicable to the controversy).

"A district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions." *Id.*

A district court cannot accept "on faith" a class proponent's assurances that variations in state law have no relevance or can be overcome. *Id.* at 741-42. Instead, a plaintiff must "credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles." *Id.* at 742; *see Cole v. Gen. Motors Corp.,* 484 F.3d 717, 724 (5th Cir. 2007). In *Castano,* the Fifth Circuit discussed a case where class proponents had met this burden, *School Dist. of Lancaster v. Lake Asbestos of Quebec, Ltd.,* 789 F.2d 996, 1010 (3d Cir. 1986), where they "under[took] an extensive analysis of the variances in products liability among the jurisdictions," "separat[ed] the law into four categories," and "made a credible showing . . . that class certification d[id] not present insuperable obstacles." *Castano,* 84 F.3d at 742. Failure to engage in an analysis of state law variations is grounds for denying certification. *Cole,* 484 F.3d at 724.

Plaintiffs propose a nationwide class action, and allege fourteen causes of action under state law. Pls.' Sec. Am. Compl. at [133] at pp. 36-47. Plaintiffs have not analyzed any variances in the law across the fifty states for these causes of action, nor have they offered a proposal as to how the Court would manage such variances in state law at trial. They have not addressed, or proposed a plan for

-15-

dealing with, procedural variances in state law which might confront the class, such as differing statutes of limitations and choice of law analyses. They seek punitive damages, but they have not addressed the differing state legal standards for obtaining such relief.

Plaintiffs' argument that state law variances can be overcome because Defendants' "policies and procedures did not differ by state" misses the point. Pls.' Reply [119] at p. 15. Regardless of whether Defendants' policies were uniform nationwide, state laws do vary, requiring individualized application of the appropriate state law to each claim. Plaintiffs' argument that state law variances are irrelevant because "the crux of this matter" concerns violations of TILA, which does not vary among the states, does not obviate the need to analyze variations in state law for the fourteen state law claims advanced in the pleadings. *Id.*

It is difficult to fathom how common issues could predominate in light of the numerous state law claims alleged here. *See Castano,* 84 F.3d at 743 n.15. Plaintiffs have not demonstrated that variances in state law will not predominate over questions of law or fact common to the class.

2.      Individualized Factual Differences

Nor are the proposed members' claims subject to common proof. Determining the validity of each claim would require separate, individualized inquiries. Factual differences translate into "disparate applications of legal rules, including matters of causation, comparative fault, and the types of damages available to each plaintiff." *Castano,* 84 F.3d at 743 n.15.

-16-

The Court notes that Plaintiffs have not cited a single case where RESPA or

TILA claims have been certified for class treatment. In *Hyderi v. Washington Mut.*

*Bank, FA,* No. 03 C 8307, 235 F.R.D. 390 (N.D. Ill. 2006), the court found that

certification was not appropriate for RESPA claims under 12 U.S.C. § 2605(g), the

subsection upon which Plaintiffs rest their claims here, because the elements of

such claims required, among other things, individualized proof of the terms of the

loan agreements, the taxes or premiums each borrower was required to pay into

escrow, and the servicer's failure to make such payments in a timely manner. *Id.* at

399. The court also noted that "in the vast majority of RESPA decisions, class

action treatment was deemed inappropriate" for failure to satisfy the predominance

requirement. *Id.* (collecting cases).

Similarly, Plaintiffs' TILA claims would require proof of the servicer's

"[f]ail[ure] to credit a payment to the consumer's loan account as of the date of

receipt . . .," proof that late fees were imposed improperly, and proof that borrowers

were wrongfully reported to credit agencies. 15 U.S.C. § 1639f(a); 12 C.F.R.

226.36(c). They would also require evidence that Defendants unlawfully earned

interest on the borrowers' accounts. 15 U.S.C. § 1639d(g)(3). Determining whether

the proposed members have compensable TILA claims would require an analysis of

each member's loan account to determine how payments were credited, whether

late fees were improperly imposed, whether the member was improperly reported to

credit agencies, and whether Defendants unlawfully earned interest on the

member's account. In sum, resolution of the proposed members' RESPA and TILA

claims would result in a myriad of mini-trials.  These claims are not appropriate for

class certification.

Plaintiffs misrepresentation and fraud claims are also not appropriate for

class certification.  Class certification of misrepresentation claims involving non-

uniform representations and issues of individual reliance is generally

inappropriate. *See Grainger v. State Sec. Life Ins. Co.,* 547 F.2d 303, 307 (5th Cir.

1977)(class action generally inappropriate where there are "material variations in

the alleged misrepresentations"); *Keyes v. Guardian Life Ins. Co. of America,* No.

CIVA.3:97cv439LN, 194 F.R.D. 253, 259 (S.D. Miss. 2000)(collecting

misrepresentation cases where certification was denied because of non-uniform

representations and individual reliance issues).  Defendants' alleged

misrepresentations are contained in letters, account statements, and loan

documents, as well as in telephone conversations.  Pls.' Sec. Am. Compl. [133] at pp.

23, 45.  Many of the alleged misrepresentations are not standard throughout the

class.  Resolving the misrepresentation claims would require proof of the individual

statements made to each member, as well as proof of the basis for each member's

reliance on those representations.

Fraud claims also require proof of individual reliance.  *Castano*, 84 F.3d at

743 n.15 ("In a fraud claim, some states require justifiable reliance on a

misrepresentation, while other require reasonable reliance.").  "According to both

the advisory committee's notes to Rule 23(b)(3) and [the Fifth Circuit's] decision in

*Simon v. Merrill Lynch, Pierce, Fenner & Smith,* 482 F.2d 880 (5th Cir. 1973), a

fraud class action cannot be certified when individual reliance will be an issue." *Id.*

at 745; *see Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d

205, 220 (5th Cir. 2003)("A class cannot be certified when evidence of individual

reliance will be necessary."). The Court finds that the proposed class members'

claims would require individualized determinations of various fact issues, which

would overwhelm any common questions of law or fact.

      3.     Individualized Damages

Class treatment "may not be suitable where the calculation of damages is not

susceptible to a mathematical or formulaic calculation, or where the formula by

which the parties propose to calculate individual damages is clearly inadequate."

*Bell Atl. Corp.,* 339 F.3d at 307. "[W]here individual damages cannot be determined

by reference to a mathematical or formulaic calculation, the damages issue may

predominate over any common issues shared by the class." *Steering Comm. v.*

*Exxon Mobil Corp.,* 461 F.3d 598, 602 (5th Cir. 2006).

Plaintiffs seek punitive damages and consequential damages for "money

being taken out of [their] possession and control and converted to Defendants' use;

loss of credit standing; emotional distress; other economic damages; increased

interest rate and future economic damages; and other damages outlined in federal

statutes." Pls.' Sec. Am. Compl. [133] at pp. 23, 32. Plaintiffs argue that the proof

required to establish damages is contained in readily available documents,

spreadsheets, and statistical reports. Pls.' Reply [119] at pp. 13-15. They elaborate

no further on how damages could be calculated from these sources.

The record supports the conclusion that if liability were proven, each class member's damages would vary. While some damages could perhaps be mechanically formulated, most of the damages requested could not. Damages resulting from money wrongfully withheld or charged, unwarranted credit reporting, emotional distress, and punitive damages, are not capable of mechanical and formulaic calculation, and are individualized to each proposed class member. No adequate formula for calculating damages has been proposed, and individual damage issues further preclude class certification.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Plaintiffs have not met their evidentiary burden of demonstrating that the requirements for class certification have been met under either Rule 23(a) or Rule 23(b)(3) of the Federal Rules of Civil Procedure. Their Motion for Class Certification [106] should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, the Motion for Class Certification [106] filed by Plaintiffs, Andrew Burkett and Denise Burkett, is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 4th day of September, 2012.

<u>*s/ Halil Suleyman Ozerden*</u>
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE